OPINION OF THE COURT
Philip S. Straniere, J.
Claimant, Charles D’Arrigo, commenced this small claims action against the defendant, Alitalia, alleging that the defendant had damaged claimant’s luggage. A trial was held on February 21, 2002. Claimant, an attorney-at-law, represented himself. Defendant was represented by counsel.
Claimant testified that he and his wife had flown to Italy on defendant airline on September 3, 2001 and were to return to Newark Airport on September 11, 2001. Claimant alleges that their luggage was first damaged in arriving in Italy and this was reported to defendant upon claimant’s arrival in Naples. On the return trip on September 11, 2001 claimant and his wife boarded the airplane for their return flight to Newark; however, the attack on the World Trade Center required the flight to return to Milan. Claimant and his wife were not given *189 any new tickets by defendant after the flight landed in Milan. Claimant and his wife remained in Milan until September 16, 2001 when the defendant was able to finally provide a return flight to Newark. At no time did claimant ever receive a new ticket from the defendant. When claimant arrived in Newark, he noticed additional damage to his luggage and filed a claim with an employee of Alitalia. The claimant stated that the report was entered on a computer by the defendant. Claimant is seeking the value of a set of luggage since the individual pieces that were damaged cannot be repaired and they are part of a set. In addition, there is one tote bag that was damaged.
Defendant acknowledges receipt of the damage claim when claimant arrived in Italy but denies receiving any notice from the claimant upon his return to New York. The basis of the denial is that the Warsaw Convention requires notice to the airline to be in writing and that entry of the information on the computer is not a writing. Defendant stated that the claims procedure is set forth on the ticket. Claimant counters that as a practical matter he had no notice of the claims procedure since the defendant collected the ticket from the claimant on the September 11, 2001 flight and he never had a new ticket issued before finally leaving Italy on September 16, 2001.
Legal Issues Presented:
A. Does the Warsaw Convention Apply?
The United States ratified the Warsaw Convention in 1934 (49 US Stat 3000, reprinted following 49 USCA § 40105). Both the United States and Italy are signatories of the treaty. The Convention was designed to establish uniform rights and remedies for passengers, baggage and goods engaged in international transportation performed by aircraft for hire. As the flights in question were between the United States and Italy, the Warsaw Convention applies to the facts raised in this claim. Article 18 of the Warsaw Convention makes the carrier liable for damage to any checked baggage sustained in transportation. The Warsaw Convention creates an exclusive remedy in those cases where it is applicable although any cause of action is governed by state law (Alvarez v Aerovias Nacionales de Colombia, 756 F Supp 550 [SD Fla 1991]).
B. Did the Defendant Receive Written Notice?
Article 26 of the Warsaw Convention provides:
“(1) Receipt by the person entitled to the delivery of baggage or goods without complaint shall be prima facie evidence that the same have been delivered in good condition and in accordance with the docu *190 ment of transportation.
“(2) In case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within 14 days from the date on which the baggage or goods have been placed at his disposal.
“(3) Every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.
“(4) Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.”
The claimant has submitted into evidence the receipt of complaint issued by defendant to the claimant after the flight from New York to Italy. In regard to the damage claimant alleges occurred on the return flight, defendant does not specifically deny that notice was received by telex or computer on September 16, 2001. Defendant instead is advocating that this was not a “complaint * * * in writing” as required by the Warsaw Convention in article 26 (3). In the alternative, defendant states that the measure of damages is $21 per kilogram of weight of the baggage and the six bags in question loaded would weigh 90 kilograms. Defendant calculated claimant’s damages as $1,260 pursuant to this means of measurement. Warsaw Convention article 22 limits the airlines liability to 250 francs per kilogram. Query: has the measure of damages changed since France now uses the Euro as currency? Claimant contends that the value of the luggage is $2,565 and has submitted catalogue descriptions of the items to substantiate these costs.
Defendant asserts that there was no written notice given by the claimant since claimant failed to submit either a claim form or a writing containing the relevant information. Defendant asserts that an entry on a computer by its employee does not qualify in this regard.
Since the Warsaw Convention does not specifically define the word “writing,” the court will look to New York law for guidance. Black’s Law Dictionary (5th ed) defines “writing” as “the expression of ideas by letters visible to the eye,” a definition which would cover words appearing on a computer screen.
General Construction Law § 56 states “[t]he terms writing and written include every legible representation of letters upon *191 a material substance, except when applied to the signature of an instrument.” (Query: what is the opposite of a “material substance”? An immaterial substance or an ethereal substance? By definition does not an object have to be material to be a substance?) Undoubtedly “sky-writing” would not qualify as a “writing” in New York nor would something being “written on the wind.” Under the Uniform Commercial Code “ ‘written’ or ‘writing’ includes printing, typewriting or any other intentional reduction to tangible form” (UCC 1-201 [46]). A “written instrument” according to the Penal Law “means any instrument or article, including computer data or a computer program, containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information * * * .” (Penal Law § 175.00 [3].) In dealing with a “qualified financial contract” there is sufficient evidence that a contract has been made if there is evidence of electronic communication including, without limitation, the recording of a telephone call or the tangible written text produced by computer retrieval (General Obligations Law § 5-701 [b] [3]).
Finally the Legislature has adopted the State Technology Law (Electronic Signatures and Records Act) which includes as the definition of “electronic record” the “information, evidencing any act, transaction, occurrence, event, or other activity, produced or stored by electronic means and capable of being accurately reproduced in forms perceptible by human sensory capabilities” (State Technology Law § 102 [2]). Section 106 of the State Technology Law permits the admitting into evidence of an electronic record and although the Act sets forth certain exceptions to its applicability, claims for luggage damage under the Warsaw Convention are not one such exclusion (State Technology Law § 107). The rules and regulations promulgated to facilitate the implementation of this act set forth the legislative intent in passing the law and indicate that although compliance with it is voluntary, the law does apply to individuals and private entities (9 NYCRR 540.1).
There is no evidence to contradict claimant’s testimony that he filed a claim with defendant’s employee entering the information on a computer terminal. Claimant has a reputation in the community for being a “reasonable” person so it is likely that he went to the Alitalia counter to complain and not some other location. It is also likely that if he was told to fill out a form or register the complaint by some other medium he would have done so. Apparently if claimant’s complaint was either chiseled in rock accompanying the Rosetta Stone, inscribed on papyrus along with the Dead Sea Scrolls or carved in a tree next to the word “Croatan” the defendant would have received “written” notice. But entry into a computer terminal by *192 defendant’s employee is not “written” notice. It is ironic in an age where airlines are issuing “e-tickets” the defendant can assert that the only way for a claim to be effective is that it must be in writing presumably on paper.
The only conclusion that can be reached is that as a matter of law the entry of claimant’s complaint onto a computer by an employee of the defendant was a writing under the laws of the State of New York and meets the notice requirements of the Warsaw Convention.
C. Is the Defendant in Compliance with the Warsaw Convention?
Article 3 of the Warsaw Convention requires a carrier to deliver a passenger ticket that contains certain information including the rules relating to liability established by the Convention. Claimant testified that his original ticket was collected by defendant on September 11, 2001 and after the World Trade Center attack the airplane returned to Italy and that no new airline ticket was ever reissued claimant. Defendant has not contradicted this testimony.
Article 3 (2) provides: “The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.” This section establishes that in spite of the fact that the defendant did not issue a ticket to claimant for the flight on September 16, 2001, the Warsaw Convention applied. What the failure to issue a ticket does do, is eliminate the applicability of the recovery limits imposed by article 26.
Article 4 of the Warsaw Convention sets forth certain rules and regulations applicable to baggage with which the carrier must comply. The carrier is required to issue a “baggage check” which includes a notice that the Warsaw Convention applies to this transaction. If the carrier does not issue a receipt or the receipt does not contain the required information then “the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.” (Art 4 [4].) So even if the defendant did not issue a new ticket to the claimant as is alleged, the defendant could still invoke the limits of liability in regards to the damaged baggage by introducing evidence of compliance with article 4. Neither side has raised the issue of the existence of the baggage check, and since the defendant has the burden of proving compliance with the Convention it must be presumed that there is no baggage check or that it did not comply with the Convention and notify the claimant of his rights in regard to a damage claim.
*193 The claimant is entitled to be compensated for the damage to his luggage. The defendant’s failure to comply with the ticketing and baggage claim requirements of the Warsaw Convention permits claimant to be compensated pursuant to New York law rather than the limitations of the Warsaw Convention.
D. To What Amount of Damages is the Claimant Entitled?
If the limitations on liability of the Warsaw Convention were applicable to the case, claimant’s recovery would be limited to 250 francs per kilogram of weight of baggage. Since the franc is no longer apparently used as a medium of exchange, how is a court supposed to calculate damages? Is a court to compute the gold equivalent of the French franc as set forth in article 22 (4) to dollars and multiply by the weight of the baggage? Fortunately the court does not have to resolve this problem. Since the defendant did not comply with the Warsaw Convention these limitations are not applicable to claimant’s cause of action.
Claimant is entitled to damages under New York law. Monetary damages would not be the replacement value of the luggage, but would be the difference in market value of the luggage before the time of its physical damage as compared to the market value after that event or the cost of repairs, whichever is less. Although physically damaged, the claimant has not established if the individual pieces are totally unusable or merely suffered a diminution of their cosmetic appearance rendering them unsightly. Nor has he provided any law that supports the principal that monetary damages are to be calculated on the replacement value of the entire set of luggage as opposed to the physical damages to the individual pieces. Claimant has, in fact, submitted estimates for the replacement cost of all the luggage; however, that is for new pieces and the estimates do not indicate the value of the used luggage at the time of the loss. Nor did claimant indicate how long he had owned the luggage.
Therefore it is impossible for the court to properly assess damages at this time based on the evidence before it.
Conclusion:
In an effort to do substantial justice as mandated by the small claims rules, the matter is adjourned until May 30, 2002 at 6:30 p.m. for a trial on the issue of damages only. In the alternative the parties should consider settling the case for $1,645, the cost to replace the three physically damaged pieces.